UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| B.M.,<br><br>        Plaintiff,<br><br>    v.<br><br>WYNDHAM HOTELS & RESORTS, INC., et al.,<br><br>        Defendants. | Case No. 20-cv-00656-BLF<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS WYNDHAM HOTELS & RESORTS, INC.'S AND CHOICE HOTELS INTERNATIONAL, INC.'S MOTIONS TO DISMISS WITH LEAVE TO AMEND; DENYING CHOICE HOTELS INTERNATIONAL, INC.'S MOTION TO STRIKE; ALLOWING PLAINTIFF TO PROCEED WITH A PSEUDONYM; SETTING CASE MANAGEMENT CONFERENCE ON SEPTEMBER 18, 2020 AT 10:00 A.M.**<br><br>[Re: ECF 32; ECF 49] |

Plaintiff B.M. is a survivor of sex trafficking. She brings this action against three hotel chains alleging violation of Trafficking Victims Protection Reauthorization Act ("TVPRA") for profiting from her sex trafficking.

Before the Court are two motions: (1) Defendant Wyndham Hotels & Resorts, Inc.'s ("Wyndham") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) at ECF 32 and (2) Defendant Choice Hotels International, Inc.'s ("Choice") Motion to Dismiss under Rule 12(b)(6) and Motion to Strike under Rule 12(f) at ECF 49. The Court heard oral arguments on July 9, 2020. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART both Motions to Dismiss WITH LEAVE TO AMEND. Choice's Motion to Strike is DENIED.

**I. BACKGROUND**

Unless otherwise noted, the following factual allegations are drawn from the Complaint, ECF 1 ("Compl.").

1  Defendant Wyndham is "one of the largest hotel brands in the world with nearly 9,000
2  branded properties in more than eighty (80) countries." Compl. ¶ 10. Super 8® by Wyndham
3  ("Super 8") is a Wyndham "brand property." *Id.* ¶ 10(b). Defendant Choice is another large
4  worldwide hotel brand. *Id.* ¶ 11. Clarion Inn is a Choice "brand property." *Id.* ¶ 11(a). Defendant
5  G6 Hospitality, LLC ("G6") is "one of the largest motel brands in the world." *Id.* ¶ 12. Motel 6
6  South ("Motel 6") is a G6 "brand property." *Id.* ¶ 12(a).

7  Plaintiff B.M. was trafficked for commercial sex as minor at hotels in Santa Clara County,
8  California, including Super 8, Clarion Inn, and Motel 6. Compl. ¶¶ 4, 6. B.M. was first subjugated
9  to sex trafficking in 2014 at Defendants' hotels when she was sixteen years old. Compl. ¶ 67. For
10 two years, B.M.'s traffickers rented two adjoining rooms at a Super 8 hotel and Clarion Inn. *Id.* ¶
11 68. B.M. and other girls were forced to perform commercial sex acts with ten to fifteen men a day.
12 *Id*. A procession of adult men would enter B.M.'s room, stay for 15 minutes to an hour on average,
13 and then leave. *Id.* ¶ 71. The adult men arriving at B.M.'s room were "typically middle-aged men
14 of a variety of races," and none of them "appeared to be age-appropriate contemporaries of the minor
15 Plaintiff." *Id.* ¶ 72. None of her visitors acted "as though they were a guardian or relative" of B.M.
16 *Id*. B.M. alleges that Defendants knew or should have known that B.M. was being sex trafficked
17 due to: (1) large amounts of used condoms, empty lube bottles, and other sex related items in the
18 hotel room; (2) payments for the rooms in cash; (3) B.M.'s physical appearance (malnourished,
19 bruised, and beaten); (4) a continuous procession of older men entering and leaving B.M.'s room;
20 and (5) excessive requests for sheets, cleaning supplies, and room service. *Id*. ¶ 74.

21 B.M. brings this action pursuant to the TVPRA against Defendants Wyndham, Choice, and
22 G6 (together, "Defendants"). Compl. ¶¶ 2, 8. B.M. alleges that all Defendants knowingly benefited
23 from facilitating the sex trafficking venture in which B.M. was victimized in violation of the
24 TVPRA. *Id*. ¶¶ 5, 8.

25 As to Wyndham specifically, B.M. alleges that Wyndham was on notice of repeated
26 incidences of sex trafficking occurring on its Super 8 branded properties. *Id.* ¶ 64 (a)-(d). According
27 to Plaintiff, Wyndham failed to implement its anti-trafficking policies to prevent related
28 misconducts and continues to profit from the business trafficking brings. *Id.* ¶ 64(f). The Complaint

United States District Court
Northern District of California

cites multiple news reports and online reviews (for example on www.tripadvisor.com) to allege Wyndham had actual or constructive knowledge of the sex trafficking occurrences at its Super 8 branded hotels throughout the country, and argues that Wyndham's knowledge facilitated the sex trafficking of B.M. *Id.* ¶ 64(n). B.M. further contends that Wyndham was in an agency relationship with the Super 8 hotels through its "exercise of an ongoing and systematic right of control over Super 8® hotels," including how the hotels conducted daily business. *Id.* ¶ 64(k). Wyndham also "held out Super 8 branded hotels to the public as possessing authority to act on its behalf." *Id.* ¶ 64(l).

Similarly, with regard to Choice, B.M. alleges that Defendant Choice had constructive knowledge of sex trafficking occurring on its branded hotel properties. Compl. ¶ 65(c). According to Plaintiff, Choice knew or should have known that Clarion Inn hotels where Plaintiff was trafficked "were in areas known for high incidences of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff was trafficked." *Id.* ¶ 65(d). Choice allegedly failed to implement policies to protect B.M. from being trafficked and continues to profit from the business sex trafficking brings. *Id.* ¶ 65(a). B.M. alleges that Clarion Inn employees threatened to eject B.M. and her traffickers, but never took further action. *Id.* ¶ 69. Despite the threats, B.M. and other victims continued to be trafficked on the premises. *Id.* B.M. also cites news reports and online reviews on www.facebook.com to allege Choice's actual or constructive knowledge of the sex trafficking occurrences at its Clarion Inn hotels throughout the country and argues that Choice's knowledge facilitated the sex trafficking of B.M. *Id.* ¶ 65(j). As to the relationship between Choice and the Clarion Inn, B.M. contends that the two were in an agency relationship through Choice's "exercise of an ongoing and systematic right of control over Clarion Inn® hotels," including how Clarion Inn hotels conducted daily business. *Id.* ¶ 65(g). Choice also "held out Clarion Inn® branded hotels to the public as possessing authority to act on its behalf." *Id.* ¶ 65(h).

On January 29, 2020, B.M. filed this lawsuit against all Defendants. Compl. On March 25, 2020, Wyndham filed a motion to dismiss. Wyndham's Motion to Dismiss Complaint Under Fed. R. Civ. P. 12(b)(6) ("Wyndham Motion"), ECF 32. B.M. filed an opposition, and Wyndham replied.

3

ECF 59; ECF 62. On April 10, 2020, Choice filed a motion to dismiss and motion to strike. Choice's Motion to Dismiss under Rule 12(b)(6), Motion to Strike under Rule 12(f) ("Choice Motion"), ECF 49. B.M. filed an opposition, and Choice replied. ECF 58; ECF 60. G6 has answered the Complaint. ECF 47.

## II. MOTIONS TO DISMISS

### A. Legal Standard

#### 1. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue

4

delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### 2. TVPRA

B.M. brings this action under Trafficking Victims Protection Reauthorization Act ("TVPRA"). The TVPRA has two provisions relevant to this case providing (1) criminal penalties and (2) civil liability.

The TVPRA provides for criminal penalties as set forth in 18 U.S.C. § 1591:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
>> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Section 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," § 1591(e)(4), and defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," § 1591(e)(6). In *Afyare*, the Sixth Circuit agreed with a district court that a defendant must "actually participate and commit some 'overt act' that furthers" the criminal "aspect of the venture" and that the TVPRA "did not criminalize" any lesser conduct. *U.S. v. Afyare*, 632 Fed. App'x 272, 286 (6th Cir. 2016). Thus, *Afyare* court required the prosecution "to prove that the defendant actually participated in a *sex-trafficking venture*." *Id.*

5

TVPRA's civil liabilities are set forth under U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). B.M. sues under 18 U.S.C §1595.

As a threshold matter, the Court addresses the parties' dispute as to whether the "participation in a venture" definition from the criminal liability section of the TVPRA, section 1591(e)(4), applies to the civil liability section 1595 and concludes that it does not. The Court agrees with the statutory construction analysis in *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019), adopted by Judge Orrick in *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-CV-00155-WHO, 2020 WL 3035794, at *1, n. 1 (N.D. Cal. June 5, 2020) that applying the "participation in a venture" definition from the criminal liability section of the TVPRA to the civil liability section of the TVPRA, "would void the 'should have known' language in the civil remedy" and "[t]his violates the 'cardinal principle of statutory construction that a statute ought, upon the whole, to be construed so that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *J.C. v. Choice Hotels Int'l, Inc.,* 2020 WL 3035794, at *1, n. 1 (quoting *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d at 969). Accordingly, B.M. is not required to allege an overt act in furtherance of or actual knowledge of a sex trafficking venture in order to sufficiently plead her section 1595 civil liability claim. *See A.B. v. Marriott Int'l, Inc.*, No. CV 19-5770, 2020 WL 1939678, at *13 (E.D. Pa. Apr. 22, 2020) (declining to apply the "participation in a venture" element from the criminal offense defined by Congress in section 1591 to a claim or civil remedy).

**B.     Discussion**

Wyndham and Choice argue that the Complaint's allegations are insufficient for either direct or vicarious liability. For the reasons discussed below, the Court finds that the Complaint fails to allege sufficient facts to make a plausible claim for direct liability and grants leave to amend for that theory. The Court is satisfied, however, that Plaintiff has pled sufficient facts that when taken as

true, establish a plausible claim for an agency theory of liability.

### 1. Plaintiff's Direct Liability Theory

To state a claim under a section 1595(a) beneficiary theory, B.M. must allege facts from which the Court can reasonably infer that Wyndham and Choice (1) "knowingly benefit[ted] financially or by receiving anything of value"; (2) from participation in a venture; (3) they "knew or should have known has engaged in" sex trafficking. Wyndham and Choice argue that Plaintiff fails to allege facts to support the three elements. The Court recognizes that Wyndham and Choice are unrelated companies and that Plaintiff must separately allege facts against each defendant to support her claims. Where the Court discusses the allegations against both Defendants, it is based on the Court's consideration of separate allegations similar in nature and similar arguments proffered by each Defendant in their motions. Combining the analysis of the issues is solely for the purpose of brevity. There is no confusion by the Court that Plaintiff must separately plead and prove her case against Choice and Wyndham.

      a.   Knowing financial benefit

Wyndham and Choice challenge Plaintiff's allegations that they knowingly benefited from her trafficking. *See* Wyndham Motion at 6-7; Choice Motion at 10-12. They argue that the "'benefit' must derive directly from, and be knowingly received in exchange for, participating in a sex-trafficking venture." Wyndham Motion at 6. According to Wyndham and Choice, receiving royalties from independently owned and operated hotels is not enough. *Id.* at 6-7. The Court disagrees. Wyndham and Choice's interpretation of the statute reads a requirement for "actual knowledge" *of criminal sex trafficking* into the civil statute, reading out the "should have known" language. The "knowingly benefit" element of section 1595 "merely requires that Defendant knowingly receive a financial benefit" and the rental of a room (or Wyndham and Choice's receipt of royalties for that rental) constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element. *H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019).

Here, Plaintiff alleges that Defendants received financial benefits and other incidentals from continuously renting rooms to her traffickers. *See* Compl. ¶¶ 2, 10(h), 11(h), 82, 85. Plaintiff alleges

1  that Defendants directly benefited from the trafficking of Plaintiff on each occasion they received
2  payment for rooms that she was being kept in at the Defendants' branded properties. *See id.* ¶ 90.
3  Plaintiff's allegations are sufficient to meet the "knowingly benefitted" element of a civil claim
4  under section 1595 of the TVPRA at the motion to dismiss stage.

          b.  Participation in venture

Having found that "participation in venture" under section 1595 of the TVPRA does not require an "overt act" of participation in the sex trafficking itself, the Court must then examine whether Plaintiff has alleged sufficient facts for a plausible claim that Wyndham and Choice "participated in a venture."

The Court finds that Plaintiff's direct liability theory against Wyndham and Choice is insufficiently pled as to the "participation in venture" element because the Complaint fails to connect the dots between Plaintiff's alleged sex trafficking and these Defendants. Plaintiff's theory is that Defendants participated in a venture "by participating in, and facilitating, the harboring and providing of B.M. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions." Compl. ¶ 89. Plaintiff argues that she alleges facts showing that Wyndham and Choice "participated in a venture" because their branded hotels (Super 8 and Clarion Inn) rented rooms to people they knew or should have known were engaged in sex trafficking. *See* Opp'n to Wyndham at 12 (citing Compl. ¶¶ 62-64), ECF 59. Plaintiff further alleges – and the Court accepts as true at this stage – that B.M. showed visible signs of being sex trafficked (*e.g.*, visible injuries and consistent foot traffic from older men to her room) when she was at one Super 8 and one Clarion Inn facility in San Jose, California. Compl. ¶¶ 71-72, 74. In addition, Plaintiff alleges that Clarion Inn employees threatened to eject Plaintiff B.M. and her traffickers, but never took further action. *Id.* ¶ 69. According to Plaintiff, Wyndham (the ultimate parent company of the franchisor of the Super 8 hotel brand[1]) and Choice (the franchisor of the Clarion Inn

---

[1] Wyndham asserts that it is the "the ultimate parent company of the franchisor of the Super 8® brand." Wyndham Motion at 1. Plaintiff does not meaningfully dispute the existence of the franchisor/franchisee relationship between Wyndham and Super 8 but instead, argues that the level of "control" Wyndham exercises over its franchisees – which would determine vicarious liability – is a question of fact that cannot be determined without discovery. Opp'n to Wyndham at 20, 21; *see also* Compl. ¶¶ 55-60(a), 61 (describing how "Defendants control the hospitality industry" by

hotels[2]) were generally aware that acts of sex trafficking take place in their franchisee hotels around the United States. *Id.* ¶¶ 64, 65.

While these allegation might be sufficient to state a plausible claim against the specific hotels where Plaintiff was trafficked (who Plaintiff has not sued), they do not make a plausible claim that Wyndham and Choice directly participated in a venture that *trafficked B.M.* at the specific facilities she alleges her traffickers used. In other words, the Complaint is devoid of any facts linking *these Defendants (Wyndham and Choice)* to the sex trafficking of *this Plaintiff (B.M.)*, and thus fails to make a plausible claim for Wyndham's and Choice's direct "participation in venture".

        c.    Knew or should have known the venture was engaged in trafficking

While Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, Plaintiff must allege facts to support that Wyndham and Choice, at the very least, rented rooms to people they should have known were engaging in her sex trafficking. And she has failed to do so here.

Plaintiff alleges the following facts, specific to her trafficking:

- "For two years, Plaintiff's traffickers rented two adjoining rooms at the Super 8 and Clarion Inn. Plaintiff was one of several other girls that were being simultaneously trafficked in these two rooms. Each girl, including minor Plaintiff B.M., would be forced to perform commercial sex acts with ten to fifteen men a day." Compl. ¶ 68.

- "Clarion Inn employees threatened to eject Plaintiff B.M. and her traffickers, but never took further action. Despite these threats, Plaintiff B.M. and several other victims continued to be trafficked on the premises." Compl. ¶ 69.

- "Day after day, a procession of adult men would enter minor Plaintiff B.M.'s room, stay

---

"lend[ing] their name and likeness to third party owners" while controlling the operations per franchise contracts).

[2] Choice asserts that it is the franchisor of Clarion Inn. Choice Motion at 1. Plaintiff does not dispute that a franchisor/franchisee relationship exists between Choice and Clarion Inn. *See generally*, Opp'n to Choice. Instead, Plaintiff argues that Choice's franchisor/franchisee arguments are "premature" because "the parties have yet to engage in any substantive discovery related to Choice's control over the day-to-day operations of the Clarion Inn." *Id.* at 17; *see also* Compl. ¶¶ 55, 60(5), 61.

for 15 minutes to an hour on average, and then leave." Compl. ¶ 71.

- "The adult men arriving at the Plaintiff's room were typically middle-aged men of a variety of races – none of whom appeared to be age-appropriate contemporaries of the minor Plaintiff. None of these visitors acted in any manner as though they were a guardian or relative of the minor Plaintiff." Compl. ¶ 72.

Further, Plaintiff alleges that Defendants "knew or should have known that Plaintiff B.M. was being trafficked for sex" due to the following red flags:

- large amounts of used condoms, empty lube bottles, and other sex-related items in the hotel room;
- payments for the rooms in cash;
- Plaintiff's physical appearance (malnourished, bruised, beaten);
- a continuous procession of older men entering and leaving minor Plaintiff B.M.'s room;
- excessive requests for sheets, cleaning supplies, room service; and
- the personal relationship between the front desk employees and Plaintiff's traffickers.

Compl. ¶ 74. But all these allegations support a theory that the staff at the franchisee hotels where Plaintiff was trafficked knew or should have known about her trafficking. The Complaint fails to allege facts as to *how* Wyndham (the ultimate parent company of the franchisor) and Choice (the franchisor) knew or should have known Plaintiff was being trafficked. To support her direct liability theory, Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking – and she fails to do so in her Complaint.

### 2. Plaintiff's Agency Liability Theory

Wyndham and Choice argue that Plaintiff's allegations of vicarious liability are "conclusory" and should be dismissed. Wyndham Motion at 9-10; *see also* Choice Motion at 14-17. The Court disagrees. Under California law, "a franchisee may be deemed to be the agent of the franchisor." *Kuchta v. Allied Builders Corp.*, 21 Cal. App. 3d 541, 547 (Ct. App. 1971). "The general rule is that, if a franchise agreement gives the franchisor the right of complete or substantial control over the franchisee, an agency relationship exists." *Walker v. Pac. Pride Servs.*, Inc., 341 F. App'x 350, 351 (9th Cir. 2009) (citing *Kuchta*, 21 Cal. App. 3d at 547).

The Court is satisfied that Plaintiff has alleged sufficient facts to establish a plausible claim for an agency relationship between the franchisees and Wyndham and Choice. For example, Plaintiff alleges that Wyndham exercises "ongoing and systemic right of control over Super 8® hotels" by a variety of actions including "setting employee wages," "making employee decisions," and "standardized training methods for employees." Compl. ¶ 64(k); *id* ¶ 65(g) (same allegations as to Choice and Clarion Inn). While Plaintiff might ultimately not succeed in proving these allegations, they are enough to get her past the motion to dismiss.

Similarly, Plaintiff's allegations that Wyndham and Choice are liable as joint employers of the franchisee hotel employees survive the motion to dismiss. The joint employer doctrine recognizes that "even where business entities are separate, if they share control of the terms or conditions of an individual's employment, both companies can qualify as employers." *Johnson v. Serenity Transp., Inc.*, 2016 WL 270952, at *10 (N.D. Cal. Jan. 22, 2016). The Ninth Circuit has adopted a four-part "economic reality" test to determine when the employer-employee relationship exists. *See Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983). These factors include whether the employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* Plaintiff alleges that Wyndham and Choice had control over the hotels where was trafficked by, for example, advertising for employment; making employment decisions; setting employee wages; standardized or strict rules of operation; and standardized training methods for employees. Compl. ¶ 64(k); *id* ¶ 65(g). These alleged facts state a plausible claim for joint employment.

To be clear, the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking. *See A.B. v. Marriott Int'l, Inc.*, CV 19-5770, 2020 WL 1939678, at *8 (E.D. Pa. Apr. 22, 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking."). But the Court finds that Plaintiff has alleged sufficient facts to support a plausible claim that Wyndham and Choice received financial benefits from a venture they vicariously participate in (through their franchisees) that the franchisees should have known was engaged in sex

11

1  trafficking of B.M. in violation of section 1595.

2  Choice and Wyndham argue that "[t]here is no case law that supports the idea that a simple
3  agency relationship […] is sufficient to create liability under the TVPRA." Choice Motion at 14;
4  *see also* Wyndham Reply at 6, n.5, ECF 62. The Court disagrees. For example, in *A.B. v. Marriott*
5  *Int'l, Inc.*, Judge Kearney held:

> We agree A.B. does not plead facts after two attempts allowing us to reasonably infer Marriott knew of sex trafficking victimizing her. But A.B. sufficiently pleads specific facts from which we can reasonably infer Marriott, under an actual agency theory subject to discovery, knowingly benefitted from participating in a venture which it should have known engaged in her trafficking. This is all Congress requires a victim to plead.

10  *A.B. v. Marriott Int'l, Inc.*, 2020 WL 1939678, at *1. Wyndham acknowledges this holding but
11  disagrees with it. *See* Wyndham Reply at 6 n. 2 ("The court in A.B. denied a motion to dismiss by
12  a hotel franchisor on the narrow grounds that the complaint alleged an agency relationship between
13  the franchisor and independent third-party franchisees. *A.B., 2020 WL 1939678*, at *19. The
14  TVPRA, however, does not provide for secondary liability."). Neither Wyndham nor Choice has
15  provided any authority to support the assertion or explain why the well-established agency liability
16  is inapplicable to TVPRA claims. *See M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d at
17  972 (denying motion to dismiss allegations of vicarious liability under agency theory for a TVPRA
18  civil claim).

### 3. Shotgun Pleading

20  Wyndham and Choice contend that the Complaint is an impermissible "shotgun" pleading.
21  Wyndham Motion at 3-4; Choice Motion at 4-6. Shotgun pleadings are pleadings that overwhelm
22  defendants with an unclear mass of allegations and make it difficult or impossible for defendants to
23  make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec.*, LLC, No.
24  SACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010). The Court is not
25  persuaded that the Complaint in this case is a shotgun pleading.

26  Although the Complaint contains many allegations that seem to relate to the hospitality
27  industry in general, it also includes numerous factual allegations specific to each Defendant. *See*
28  *e.g.,* Complaint ¶¶ 64 (allegations specific to Wyndham); 65 (allegations specific to Choice).

1    Plaintiff identifies the specific hotel locations where she was allegedly trafficked and ties those
2    locations to each Defendant. *See* Compl. ¶¶ 10; 11. While Plaintiff's allegations regarding her
3    experience at each hotel is not a model for specificity, she does allege facts as to each Defendant.
4    *See e.g.*, Compl. ¶¶ 68 ("For two years, Plaintiff's traffickers rented two adjoining rooms at the
5    Super 8 and Clarion Inn. Plaintiff was one of several other girls that were being simultaneously
6    trafficked in these two rooms."); 69 ("Clarion Inn employees threatened to eject Plaintiff B.M. and
7    her traffickers, but never took further action."). Thus, the Complaint cannot be fairly categorized
8    as an "everyone did everything" pleading. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011).
9    Choice argues that "Plaintiff incorporates every prior allegation into her claim." But "a complaint
10   does not employ impermissible shotgun pleading just because it re-alleges by reference all of the
11   factual paragraphs preceding the claims for relief." *Espinosa v. Bluemercury, Inc.*, No. 16-CV-
12   07202-JST, 2017 WL 1079553, at *5 (N.D. Cal. Mar. 22, 2017).

13   As noted at the Hearing, the Court is concerned that B.M.'s allegations against the three
14   Defendants are factually independent because the Defendants (all independent public companies)
15   are not alleged to have any connection with each other – other than the fact that B.M was allegedly
16   trafficked in three separate franchisee hotels related to each Defendant. The Court also recognizes
17   the practical issues raised by Choice. For example, Plaintiff fails to allege when she visited each
18   location at issue, how frequently she visited, and for what period of time. *See* Choice Motion at 6.
19   But the Court is not persuaded that these concerns warrant a dismissal of the entire Complaint as
20   "shotgun pleading", but instead can be resolved through case management conferences and
21   discovery motions. That said, because the Court is granting Plaintiff leave to amend her Complaint,
22   she is instructed to add as many details as possible about her stays at each location.

23   **III.   CHOICE'S MOTION TO STRIKE**

24   Choice moves to strike paragraphs 20 to 61 in the Complaint because they contain "salacious
25   and impertinent details[.]" Choice Motion at 6. Choice contends that the allegations are not related
26   to the facts in controversy and will only serve to prejudice Choice and confuse the issues. *Id*. B.M.
27   responds that the challenged paragraphs contain contextual and factual allegations and provide
28   support as to Choice's constructive notice of the sex trafficking issues on its properties. Opp'n to

Choice at 20-21, ECF 58.  B.M. also contends that Choice fails to prove that it is prejudiced by the factual allegations.  *Id*.  The Court finds that the challenged paragraphs provide relevant background information for B.M.'s claims against Defendants, as uncomfortable as that may be for Choice, and thus, DENIES Choice's Motion to Strike.

### A.  Legal Standard

Federal Rules of Civil Procedure Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  A matter is impertinent if it consists of statements that do not pertain to and are not necessary to the issues in question.  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  "Scandalous" under Rule 12(f) "generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Gallegos v. Roman Catholic Archbishop of San Francisco*, 2016 WL 3162203, at *2 (N.D. Cal. Jun. 7, 2016) (citations omitted). "Scandalous" has also been defined as allegations that cast a "cruelly derogatory light" on someone. *Holmes v. Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 938 (N.D. Cal. 2013) (citations omitted).

Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D.Cal.2004) (citations omitted).  A court should not strike allegations supplying background or historical material unless it is unduly prejudicial to the opponent.  *See LeDuc v. Ky. Cent. Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D.Cal.1992).  Indeed, if there is any doubt whether the challenged matter might bear on an issue in the litigation, the motion to strike should be denied, and assessment of the sufficiency of the allegations left for adjudication on the merits. *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015).  A court should view the pleading in the light most favorable to the nonmoving party.  *Id*.  Whether to grant a motion to strike lies within the sound discretion of the district court.  *Id*.

### B.  Discussion

While many of the challenged paragraphs are not directly relevant to B.M.'s claims against

14

1  Defendants, they nonetheless supply information regarding the general issue of sex trafficking and
2  the role of the hospitality industry. *See* Compl. ¶¶ 20-61. Viewing the pleading in the light most
3  favorable to B.M., some of the paragraphs Choice seeks to strike provide background information
4  as to Choice's general policy in dealing with sex trade and its constructive knowledge about such
5  issues. *See e.g., id.* ¶¶ 52-53. The background information is therefore related to the claims against
6  Choice and helps with a fuller understanding of the Complaint as a whole. *See Sec. & Exch. Comm.*
7  *v. Strong Inv. Mgmt.*, 2018 WL 8731559, at *7 (C.D. Cal. Aug. 9, 2018) (denying motion to strike
8  because the challenged allegations provide some historical background and context to the claims at
9  issue and they give a full understanding when read with the complaint as a whole). Moreover, the
10 challenged paragraphs are not unduly prejudicial to Choice. Even though the background
11 information may portray Choice in an unfavorable way, Choice will have opportunities to challenge
12 the allegations by evidence at a later stage in the proceedings. *See Kaiser Found. Hosp. v. Cal.*
13 *Nurses Ass'n*, 2012 WL 440634, at *4 (N.D. Cal. Feb. 10, 2012) (denying motion to strike even
14 though the background information portrayed the defendant in an unfavorable light because
15 defendants would have opportunities to challenge the allegations as the case proceeds).

16 Choice also claims that paragraphs 20 to 61 should be stricken because they are impertinent
17 and scandalous. Choice Motion at 6. The Court disagrees. As discussed above, the challenged
18 paragraphs are not impertinent because they provide relevant background information. Moreover,
19 the challenged allegations are not scandalous because they do not go into "salacious" or "needless
20 details." *See* Compl. ¶¶ 20-61; *Gallegos*, 2016 WL 3162203, at *3 (holding that the challenged
21 allegations regarding defendant's long history of sexually harassing conducts were not scandalous
22 within the meaning of Rule 12(f) because they did not go into "salacious" or "needless details" even
23 though the topic is naturally sensitive and unseemly). Although the allegations in paragraphs 20-61
24 of the Complaint might portray Defendants in an unfavorable way, they do not rise to the level of
25 being "cruelly derogatory." *See Holmes*, 966 F. Supp. 2d at 938 (holding that the allegations were
26 not scandalous because they did not rise to the level of casing the defendant in a "cruelly derogatory
27 light"). Therefore, Choice's Motion to Strike is DENIED.

28

### IV. B.M.'S USE OF PSEUDONYM

In her Complaint, B.M. requests that the Court grant a protective order and permit her to proceed under a pseudonym. Compl. ¶ 9(b). B.M. agrees to reveal her identity to Defendants for the limited purposes of investigating her claims once the parties have entered into a protective order. *Id.* ¶ 9(f). B.M. seeks redactions of her personal identifying information from the public docket and assurances that Defendants will not use or publish her identity in a manner that will compromise her personal life or future employment prospects. *Id.*

In its motion, Choice argues that B.M. is not entitled to proceed anonymously in court proceedings because she has not demonstrated sufficient grounds for her request and has not filed a motion for a protective order and leave to proceed anonymously in this Court. Choice Motion at 18-19. Nevertheless, Defendants do not oppose B.M. proceeding by pseudonym for purposes of pre-trial public filings only. Joint Case Management Statement at 9; ECF 71. In her opposition, B.M. contends that pseudonym status is warranted due to the sensitive nature of the issues and the risk of harm to her as a victim of sex trafficking. Opp'n to Choice at 22. In addition, prejudice to Choice can be reduced as B.M. will agree to reveal her identity to Choice, and the public interest will not be threatened because the bulk of the case will still be on public record. *Id.* at 22-23. The Court permits B.M.'s use of pseudonym in this case because her need for anonymity outweighs the risk of prejudice to Choice at the current stage and the public interest in knowing her identity.

#### A. Legal Standard

Rule 10(a) commands that the title of every complaint "include the names of all the parties." Fed. R. Civ. P. 10(a). However, the Ninth Circuit allows parties to use pseudonyms under special circumstances where nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment. *Does I through XXIII v. Advanced Textile*, 214 F.3d 1058, 1067-68 (9th Cir. 2000) (citations omitted). A court must balance the need for anonymity against the risk of prejudice to the opposing party and the public's interest in knowing the party's identity. *Jane Roes 1-2 v. SFBSC Mgmt.*, LLC, 77 F. Supp. 3d 990, 993 (N.D. Cal. 2015); *Does I through XXIII*, 214 F.3d at 1068. Applying the balancing test, courts have permitted plaintiffs to use pseudonyms in three situations: (1) when identification creates a risk of retaliatory

1  physical or mental harm; (2) when anonymity is necessary to preserve privacy in a matter of
2  sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his
3  or her intention to engage in illegal conduct. *Jane Roes 1-2*, 77 F. Supp. 3d at 993 (citing *Does I*
4  *through XXIII*, 214 F.3d at 1068).

5  And the Court must determine the precise prejudice at each stage of the proceedings to the
6  opposing party, and whether proceedings may be structured so as to mitigate that prejudice. *Does I*
7  *through XXIII*, 214 F.3d at 1068. Finally, the Court must decide whether the public's interest in the
8  case would be best served by requiring that the litigants reveal their identities. *Id.* at 1069. In cases
9  where plaintiff has demonstrated a need for anonymity, the district court should use its powers to
10 manage pretrial proceedings under Rule 16(b) and to issue protective orders limiting disclosure of
11 the party's name under Rule 26(c) "to preserve the party's anonymity to the greatest extent possible
12 without prejudicing the opposing party's ability to litigate the case." *Id.*; Fed. R. Civ. P. 16(b); Fed.
13 R. Civ. P. 26(c).

14 **B.    Discussion**

15 The Court permits B.M. to use a pseudonym because B.M.'s need for anonymity outweighs
16 the risk of prejudice to Defendants at the current stage of this case and the public interest in knowing
17 the B.M.'s identity. First, B.M.'s need for anonymity weighs heavily in favor of granting such
18 permission. B.M. is a victim of sex trafficking, she was trafficked when she was a minor, and this
19 case involves the disclosure of sensitive and highly personal information. *See* Compl. ¶ 9(d); Opp'n
20 to Choice at 22. The Court finds it necessary to protect B.M.'s privacy in this case. *See Doe v.*
21 *Penzato*, No. CV10-5154 MEJ, 2011 WL 1833007, at *5 (N.D. Cal. May 13, 2011) (granting the
22 plaintiff's petition to proceed anonymously where she alleged she was a victim of human trafficking,
23 forced labor, and sexual battery); *Doe v. Lee*, 2014 WL 630936, at * 2 (N.D. Cal. Feb. 18, 2014)
24 ("[B]ecause being taken advantage of in a sexual manner as a minor is of a highly sensitive and
25 personal nature, cases of involving such an issue have often been found to allow for the use of a
26 fictitious name.").

27 On the other hand, there is a low risk of prejudice to Defendants at the current stage, and the
28 public interest is better served if B.M. is allowed to proceed anonymously. Prejudice to Defendants

Case 5:20-cv-00656-BLF   Document 80   Filed 07/30/20   Page 18 of 19

is minimal because B.M. will agree to reveal her identity for purposes of investigating her claims. *See* Opp'n to Choice at 24; Compl. ¶ 9(f). In addition, the public interest in knowing the parties' identities is not threatened where, as here, there is nothing about the Plaintiff's identity which makes it "critical to the working of justice" and the basic facts of the case will be on public record. *See Jane Roes 1-2*, 77 F. Supp. 3d at 997 (holding that the public interest is not threatened because there was nothing important about the plaintiff's identity alone and the facts of the case would be on public record). Indeed, allowing victims of sexual assault to proceed anonymously serves strong public interest because other victims will not be deterred from reporting such crimes. *See Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 6026248, at *23 (N.D. Cal. Dec. 5, 2017) (holding that the public interest is served in allowing an alleged victim of sexual harassment to be sued under pseudonym to avoid deterring other victims from coming forward). Therefore, B.M. is permitted to proceed anonymously because her need for anonymity outweighs the risk of prejudice to Defendants and the public interest in knowing her identity.

Choice also argues that B.M. has not filed a motion for protective order and leave to proceed anonymously in this Court. However, the Ninth Circuit does not require a plaintiff to obtain leave to proceed anonymously before filing an anonymous pleading. *Doe v. Penzato*, 2011 WL 1833007, at *4 ("Although some Circuits require plaintiffs to obtain leave of the court before filing an anonymous pleading, the Ninth Circuit does not."); *see also Doe v. UNUM Life Ins. Co. of Am.*, 164 F. Supp. 3d 1140, 1144 (N.D. Cal. 2016) (holding that a plaintiff is not required to obtain leave to proceed anonymously before filing an anonymous pleading because any attempt to proceed anonymously would be pointless if a plaintiff had to use his or her real name first). B.M. properly requested permission to proceed anonymously in the Complaint, and the Court hereby grants her request. *See* Compl. ¶ 9.

In addition, the Court recognizes that it is required to determine the precise prejudice at each stage of the proceedings to the opposing party. *Does I through XXIII*, 214 F.3d at 1068. The Court notes that Defendants do not oppose B.M.'s use of pseudonym for purposes of pre-trial public filing at this time. Joint Case Management Statement at 9. The dispute at the current stage is therefore resolved, and any discovery issues (if presented at all) are matters for another day.

18

**V.     ORDER**

For the foregoing reasons:

(1) Wyndham's Motion to Dismiss at ECF 32 is GRANTED IN PART WITH LEAVE TO AMEND as to Plaintiff's direct liability theory and DENIED IN PART as to Plaintiff's agency liability theory.

(2) Choice's Motion to Dismiss at ECF 49 is GRANTED IN PART WITH LEAVE TO AMEND as to Plaintiff's direct liability theory and DENIED IN PART as to Plaintiff's agency liability theory.

(3) Choice's Motion to Strike at ECF 49 is DENIED.

(4) Plaintiff may continue to use a pseudonym in her public filings.

Any amended complaint must be filed within 30 days of this Order. Plaintiff may only amend her claims and shall not add new claims or new parties without leave of Court. The Court requests that the chambers copy of any amended complaint be a redlined version, in color. Wyndham and Choice must respond to the amended complaint no later than 30 days from its filing. If Wyndham and Choice move to dismiss Plaintiff's amended complaint, they must share the allowed page limits (25, 25, 15) as set out by the Court's Standing Order Re Civil Cases. A further case management conference is hereby set on **Friday, September 18, 2020 at 10:00 a.m.**

**IT IS SO ORDERED.**

Dated: July 30, 2020

_____
BETH LABSON FREEMAN
United States District Judge