UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J.M. as Personal Representative of the ESTATE OF B.M.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WYNDHAM HOTELS & RESORTS, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-00656-BLF<br><br>**ORDER GRANTING FRANCHISOR DEFENDANTS' MOTION TO DISMISSS THE SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: ECF 185] |

B.M. (now deceased) brought this action against several hotel chains under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 *et seq.*, alleging that she was sex trafficked in rooms rented under their brands. *See* Compl., ECF 1. Upon B.M.'s death, her mother J.M. substituted in as Plaintiff. *See* Order, ECF 121. J.M. thereafter filed the operative second amended complaint ("SAC"), adding new defendants and dropping others, and adding new state law claims for negligence and wrongful death. *See* SAC, ECF 164.

Defendants fall into two groups. In the first group are Wyndham Hotels & Resorts, Inc., Wyndham Hotel Group, LLC, Super 8 Worldwide, Inc., and Days Inn Worldwide, Inc. ("Franchisor Defendants"), hotel chains that license their brands to owners of hotels and motels. *See* SAC ¶¶ 23-26. In the second group are San Jose Inn Partnership and Sundowner Inn, LP ("Franchisee Defendants"), owners of hotels and motels that operate under franchise names. *See id.* ¶¶ 27-28. San Jose Inn Partnership operates the Super 8 by Wyndham motel ("Super 8 Alameda") in San Jose, California, while Sundowner Inn, LP operates the Days Inn Sunnyvale by Wyndham ("Days Inn Sunnyvale") in Sunnyvale, California. *See id.* Plaintiff alleges that B.M. was sex trafficked at both the Super 8 Alameda and the Days Inn Sunnyvale. *See id.* ¶¶ 128, 145.

1  The Franchisor Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the allegations of the SAC are insufficient to state a claim against them for direct liability under the TVPRA, negligence, or wrongful death.[1] *See* Defs.' Mot. to Dismiss, ECF 185. The Court has considered the parties' briefing, the oral arguments presented at the hearing on December 19, 2024, and the relevant legal authorities.

The Franchisor Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND for the reasons discussed below.

I. BACKGROUND[2]

*Sex Trafficking of B.M. in 2014 and 2015*

In approximately 2014 and 2015, when B.M. was 16 and 17 years old, she was sold for sex by traffickers at the Super 8 Alameda, located at 1860 The Alameda, San Jose, CA, and at the Days Inn Sunnyvale, located at 504 Ross Drive, Sunnyvale, California. *See* SAC ¶¶ 128, 145. Over the course of two years, B.M.'s traffickers rented adjoining rooms at the Super 8 Alameda. *See id*. ¶ 129. B.M. and 10-15 other girls were trafficked in those rooms, each girl being forced to perform commercial sex acts with up to 10-15 men a day. *See id*. B.M.'s traffickers also rented rooms at the Days Inn Sunnyvale, where B.M. and other girls were each forced to perform commercial sex acts with up to 10-15 men a day. *See id*. ¶ 149.

The traffickers forced B.M. and the other girls to take drugs such as methamphetamine and cocaine to keep them awake and working for days on end, and to make them lose weight. *See* SAC ¶¶ 130, 150. The traffickers also hung blankets and shower curtains to act as partitions in the rooms so that multiple girls could perform sex acts at the same time in each room. *See id*. ¶ 132. Approximately 40-60 men per day moved through the rented rooms over a two year period. *See id*. ¶¶ 132, 152.

---

[1] The Court previously determined that the original complaint alleged facts sufficient to state a claim against the Franchisor Defendants for indirect liability under the TVPRA. *See* Prior Order, ECF 80. The Franchisor Defendants indicate that although they disagree with that ruling, they do not reargue the TVPRA claim to the extent it is based on an indirect liability theory.

[2] The Background section is drawn from the facts alleged in the SAC, which are accepted as true for purposes of evaluating the Rule 12(b)(6) motion to dismiss. *See Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).

2

1  The Days Inn Sunnyvale is known to law enforcement as a locale for illegal activity such
2  as prostitution, sales of narcotics, gun possession, and gang activity. *See* SAC ¶ 146. One of
3  B.M.'s traffickers was arrested at the Days Inn Sunnyvale parking lot for drug possession on
4  October 6, 2015. *See id*. ¶ 147. B.M. was recovered from the Days Inn Sunnyvale on the date of
5  the trafficker's arrest, October 6, 2015. *See id*. ¶ 148.

*B.M.'s Filing of this Action in January 2020*

In January 2020, B.M. filed this action against several hotel franchisors, including Wyndham Hotels and Resorts, Inc., asserting a single claim under the TVPRA based on the franchisors' alleged profiting from her sex trafficking. *See* Compl., ECF 1. The Court issued an order ("Prior Order") dismissing the TVPRA claim in part with leave to amend, finding that B.M. had not stated a claim for direct liability against the franchisors under the TVPRA. *See* Prior Order, ECF 80. However, the Court found that B.M. had stated a claim for indirect liability against the franchisors under the TVPRA based on allegations of an agency relationship between the defendant franchisors and the franchisee motels where she was trafficked. *See id*. B.M. filed a first amended complaint ("FAC") in August 2020, reasserting her TVPRA claim against the same defendants. *See* FAC, ECF 82.

*Mandatory Stay of Case from October 2020 to October 2023*

In October 2020, the Court stayed this case pending adjudication of criminal proceedings against B.M.'s traffickers. *See* Order, ECF 99. The stay was mandatory under the TVPRA, which requires that "[a]ny civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." 18 U.S.C. 1595(b)(1). Excepted from the stay were matters relating to issuance of a protective order and case schedule.

B.M. passed away in June 2021. *See* Mot. for Substitution, ECF 118. Her mother J.M. substituted in as Plaintiff in October 2021. *See* Order, ECF 121.

In June 2023, Plaintiff J.M. filed a motion for leave to amend the complaint to add additional defendants and to add state law claims for negligence and wrongful death. *See* Pl.'s Mot. for Leave, ECF 128. The Court terminated that motion without prejudice on the ground that

3

1  the mandatory stay under the TVPRA was still in effect.  *See* Order, ECF 130.

2  *Lifting of Stay in October 2023 and Filing of Operative SAC in July 2024*

3  The Court lifted the stay in October 2023, following completion of the criminal proceedings against B.M.'s traffickers.  *See* Order, ECF 131.  Plaintiff filed a renewed motion for leave to amend the complaint on November 13, 2023.  *See* Pl.'s Mot., ECF 135.  The Court held a Case Management Conference on November 17, 2023.  *See* Minute Entry, ECF 140.  Plaintiff thereafter advised the Court that she needed additional time to finalize a settlement with one defendant and prepare to add new defendants and claims based on information that had come to light in the criminal proceedings.  *See* Pl.'s Status Report, ECF 145.  The Court terminated Plaintiff's pending motion for leave to amend the complaint without prejudice.  *See* Order, ECF 146.

On July 17, 2024, the Court granted Plaintiff's unopposed motion for leave to file a second amended complaint.  *See* Order, ECF 162.  The operative SAC was filed on July 24, 2024.  *See* SAC, ECF 164.  As noted above, the SAC asserts claims under the TVPRA and state law against two sets of defendants, the Franchisor Defendants and the Franchisee Defendants.  The claims asserted in the SAC are:  (1) violation of the TVPRA, 18 U.S.C. § 1589 *et seq*.; (2) negligence, Cal. Civ. P. Code § 1714; and (3) wrongful death, Cal. Civ. P. Code § 377.60.

Plaintiff alleges that Defendant San Jose Inn Partnership, which operates the Super 8 Alameda, knew or should have known a sex trafficking venture was being operated on the premises based on numerous circumstances, including the following:  anyone working at the Super 8 Alameda would have noticed the procession of unregistered guests in and out of the rooms rented by the traffickers; footage from security cameras at the Super 8 Alameda would have shown this obvious parade of men visiting underage girls; large amounts of used condoms, empty lube bottles, bodily fluids on the sheets and towels, and other sex-related items were left in the hotel rooms; and the rooms were paid for in cash.  *See* SAC ¶¶ 133-43.  In addition, several employees who worked the front desk at the Super 8 Alameda were involved in the sex trafficking venture and served as lookouts for police.  *See id*. ¶ 137.

Plaintiff likewise alleges that Defendant Sundowner Inn, LP, which operates the Days Inn

4

Sunnyvale, knew or should have known a sex trafficking venture was being operated on the premises based on numerous circumstances, including the following: anyone working at the Days Inn Sunnyvale would have noticed the procession of unregistered guests in and out of the rooms rented by the traffickers; footage from security cameras at the Days Inn Sunnyvale would have shown this obvious parade of men visiting underage girls; and large amounts of used condoms, empty lube bottles, bodily fluids on the sheets and towels, and other sex-related items were left in the hotel rooms. *See* SAC ¶¶ 152-59.

Plaintiff alleges that the Franchisor Defendants knew or should have known that a sex trafficking venture was being operated on their franchisee's premises. Defendant Wyndham Hotels & Resorts, Inc. is the ultimate parent company to several of the largest hotel brands in the world, including the Days Inn and Super 8. *See* SAC ¶ 23. Its subsidiary, Defendant Wyndham Hotel Group, LLC, is responsible for the management, supervision, training, and implementation of brand standards for all of Wyndham's hotel brands, including the Super 8 and Days Inn brands. *See id*. ¶ 24. The two Wyndham entities are referred to collectively in the SAC as "Wyndham." *See id*. Defendants Super 8 Motels, Inc. and Days Inn Worldwide, Inc. are Wyndham subsidiaries that enter into franchise agreements and licensing agreements with owners of hotels and motels. *See id*. ¶¶ 25-26. Plaintiff does not allege that any of these Franchisor Defendants operated the motels where B.M. was trafficked.

However, Plaintiff alleges that Wyndham exercises "an ongoing and systemic right of control over the Super 8 Alameda and Days Inn Sunnyvale by Wyndham's operations, including the means and methods of how the Super 8 Alameda and Days Inn Sunnyvale conducted daily business[.]" SAC ¶ 38. Plaintiff points to a number of requirements that Wyndham allegedly imposes on its franchisees relating to use of certain reservation platforms for booking and payments, employment training, use of certain software and vendors, and the like. *See id.* According to Plaintiff, these requirements translate to Wyndham's exercise of "day-to-day control over the Super 8 Alameda and Days Inn Sunnyvale . . . through its brand standards and retains control over the Super 8 Alameda and Days Inn Sunnyvale through its corporate structure, including its franchise agreements, brand standards, licensing agreements, and operating

5

agreements." SAC ¶ 45.  Based on those and similar allegations, Plaintiff claims that the Franchisor Defendants "knew or should have known that forced prostitution and trafficking was taking place well before B.M. was trafficked." *Id*. ¶ 84.

The Franchisor Defendants responded to the SAC by filing the current motion to dismiss addressed by this order.  One of the Franchisee Defendants, San Jose Inn Partnership doing business as the Super 8 Alameda, answered the SAC.  *See* Answer, ECF 182.  The other Franchisee Defendant, Sundowner Inn, LP doing business as Days Inn Sunnyvale, has not responded to the SAC.  Plaintiff has filed a request for a Clerk's entry of default against Sundowner Inn, LP, and Sundowner Inn, LP has filed a motion to deny that request and allow it to answer the SAC.  The motions relating to Sundowner Inn, LP are addressed in a separate order.

**II.     LEGAL STANDARD**

When considering a motion to dismiss under Rule 12(b)(6), the Court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).  "Dismissal is appropriate if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim."  *Id*.  "Conclusory allegations cannot defeat a motion to dismiss."  *Id*.

**III.    DISCUSSION**

The Franchisor Defendants move to dismiss Plaintiff's claim under the TVPRA (Claim 1) to the extent it is premised on direct liability, and they move to dismiss Plaintiff's claims for negligence (Claim 2) and wrongful death (Claim 3) in their entirety.  Plaintiff opposes the motion, arguing that all three claims are adequately pled.  The Court first addresses the TVPRA claim, and then takes up the state law claims.

**A.     TVPRA Claim**

The TVPRA provides that a victim of human trafficking "may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" trafficking.  18 USCA § 1595(a).  This provision expressly permits a trafficking victim to sue not only the perpetrator, but also a beneficiary of the trafficking scheme.

6

*See A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 935 (D. Or. 2020).

To state a financial beneficiary claim under § 1595(a), Plaintiff must allege facts from which the Court can reasonably infer that the Franchisor Defendants "(1) 'knowingly benefit[ed] financially or by receiving anything of value from' (2) participation in a venture they 'knew or should have known has engaged in' sex trafficking." *A.B. v. Hilton,* 484 F. Supp. 3d at 935 (quoting 18 USCA § 1595(a)). Other courts have articulated these elements with slight variations, for example, listing the defendants' participation in the venture as a separate element from the "knew or should have known" requirement. *See, e.g., G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 553 (7th Cir. 2023); *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). Regardless of the precise phrasing of the elements, however, it is clear that to state a claim under this theory, the plaintiff must plausibly allege that the defendants participated a venture they knew or should have known has engaged in sex trafficking.

In its Prior Order dismissing this claim against Wyndham in the original complaint, the Court concluded that B.M. had not alleged facts showing that Wyndham participated in a sex trafficking venture, because "the Complaint fail[ed] to connect the dots between Plaintiff's alleged sex trafficking and these Defendants." *See* Prior Order at 8. In reaching that conclusion, the Court construed the pleading requirement narrowly to mean that B.M. had to allege facts showing a link between Wyndham and *her*. *See id.* at 9. The law in this area has evolved since the Court issued its Prior Order in 2020. Applying more recent decisions such as *Salesforce.com*, it is the Court's view that although Plaintiff must allege facts showing the Franchisor Defendants' participation in a venture they knew or should have known engaged in sex trafficking, Plaintiff need not allege that the Franchisor Defendants had knowledge that B.M. specifically was being trafficked. *See Salesforce.com*, 76 F.4th at 564 (finding that the plaintiff had adequately alleged a claim under § 1595(a) by alleging Salesforce's facilitation of the success of a business "which engaged in uncounted acts in violation of Section 1591, including those that harmed" the victim).

Even applying this less stringent pleading requirement, however, the Court agrees with the Franchisor Defendants that Plaintiff has not alleged sufficient facts against *them*. As another district court in this circuit put it when summarizing the allegations before it, "while factual

7

allegations listing indicia of trafficking (i.e., condition of the hotel room, frequent male visitors) may support a theory that a hotel where Plaintiff was trafficked knew or should have known of Plaintiff's trafficking, the complaint fails to allege facts as to how . . . the parent company, corporate affiliate, or franchisor of the hotel – were aware of these facts." *A.B. v. Hilton*, 484 F. Supp. 3d at 938-39.

The Court observes that the SAC contains dozens of paragraphs describing the ways in which the Franchisor Defendants interact with its franchisees, but even after reading through the SAC carefully, the Court cannot identify any allegations giving rise to a plausible claim that the Franchisor Defendants participated in a sex trafficking venture, or that the Franchisor Defendants knew or should have known that sex trafficking was occurring at the franchisee motels operating under its brands. At the hearing, the Court asked Plaintiff's counsel to point out those paragraphs of the SAC that Plaintiff contends meet the pleading requirements for a TVPRA claim against the Franchisor Defendants. Counsel identified Paragraph 38, which contains subparts a through w describing ways in which Wyndham provides IT support for its property management systems, booking platforms, and the like. *See* SAC ¶ 38. Counsel also identified Paragraph 108, alleging that "[u]pon information and belief, Wyndham requires its hotels to carry Wi-Fi internet access with certain cybersecurity measures in place, including those that give Wyndham the ability to access and harvest that internet data." *Id.* ¶ 108.

The Court understands Plaintiff to be suggesting that these and other allegations regarding Wyndham's ability to determine whether guests access the Internet, and what sites are accessed, give rise to liability under the TVPRA. Plaintiff alleges that the sex traffickers who victimized B.M. operated out of the franchisee motels, and therefore had a high volume of Internet traffic to websites associated with sex trafficking. *See* SAC ¶¶ 139-140. Even if that is true, Plaintiffs have not alleged any facts showing that the Franchisor Defendants had a duty or the ability to monitor the Internet traffic of guests in independently owned franchise motels to determine whether illegal sex trafficking was occurring at those locations. As the Franchisor Defendants point out, courts that have addressed TVPRA claims against franchisors have found that allegations regarding normal supervision and oversight of booking and other aspects of hotel management are not

8

sufficient to make out a claim. *See, e.g., Red Roof Inns, Inc.*, 21 F.4th at 726 (finding insufficient allegations that "each of the franchisors 'owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms' at the hotels.").

The Court concludes that Plaintiff has not alleged facts sufficient to give rise to a plausible TVPRA claim against the Franchisor Defendants. Accordingly, the Franchisor Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 1 to the extent it is premised on direct liability.[3]

### B.   State Law Claims

The Franchisor Defendants contend that Claim 3 for wrongful death is subject to dismissal as time-barred and for failure to state a claim, and that Claim 2 for negligence is subject to dismissal for failure to state a claim. The Court finds the timeliness argument to be unpersuasive, but agrees that Plaintiff has failed to allege facts sufficient to state a claim for either wrongful death or negligence.

Disposing of the timeliness argument first, there is no dispute that under California law, a claim for wrongful death is governed by a two-year statute of limitations. *See* Cal. Civ. Proc. Code § 335.1 ("Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."). B.M. passed away on June 27, 2021. Plaintiff J.M. did not file the SAC adding the claim for wrongful death until more than three years later, on July 24, 2024. However, as Plaintiff points out, she filed a motion for leave to amend the complaint to add a wrongful death claim on June 26, 2023, within two years after B.M.'s death. *See* Pl.'s Mot., ECF 128. The Court terminated that motion without prejudice because the case was stayed under the TVPRA. *See* Order, ECF 130. After the stay was lifted, Plaintiff filed a later motion for leave to amend, which also was terminated to allow the parties then in the case to finalize settlement discussions. *See* Order, ECF 146. Plaintiff subsequently filed another motion for leave to amend, which was unopposed and granted by the Court, resulting

---

[3] As noted above, the Court previously determined that Plaintiff may proceed on a claim for indirect liability under the TVPRA on an agency theory. *See* Prior Order, ECF 80.

9

1   in the filing of the operative SAC.  *See* Order, ECF 162.

2           Under these circumstances, the Court finds that Plaintiff's request to add the wrongful
3   death claim was timely filed, and that the delay in ultimately filing the SAC is excused under the
4   doctrine of equitable tolling.  Equitable tolling applies when three elements are present: (1) timely
5   notice to the defendant, (2) lack of prejudice, and (3) reasonable and good faith conduct on the
6   part of the plaintiff.  *See Saint Francis Mem'l Hosp. v. State Dep't of Pub. Health*, 9 Cal. 5th 710,
7   724 (2020).  The Franchisor Defendants had timely notice that Plaintiff sought to add a claim for
8   wrongful death, as her first request for leave to amend was filed before expiration of the two-year
9   limitations period.  The Franchisor Defendants cannot establish prejudice, as they have been aware
10  since that time that Plaintiff wished to add a wrongful death claim, and they have been afforded
11  the opportunity to seek dismissal of that claim.  Finally, the Court finds Plaintiff's conduct in
12  seeking to add the wrongful death claim to be reasonable and in good faith.

13          However, Plaintiff has failed to state a claim for wrongful death or for negligence.  To state
14  a claim for wrongful death under California Code of Civil Procedure § 377.60, a plaintiff must
15  allege facts showing that the defendant's wrongful or negligent conduct caused the decedent's
16  death.  *See Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006).  To state a claim for
17  negligence, a plaintiff must allege facts showing that the defendant breached a duty of care to the
18  plaintiff and thereby caused an injury.  *See Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917
19  (1996).

20          The Franchisor Defendants correctly point out that Plaintiff has not alleged any facts
21  showing that their conduct was the cause of Plaintiff's death, an essential element of both the state
22  law claims.  The Ninth Circuit has summarized California law on causation as follow:  "The
23  required element of legal causation has two components: cause in fact and proximate cause."
24  *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (internal quotation marks and citation
25  omitted).  "Although causation often presents a question of fact for the jury, where the facts are
26  such that the only reasonable conclusion is an absence of causation, the question is one of law, not
27  of fact."  *Id*. (internal quotation marks and citation omitted).  In the present case, Plaintiff alleges
28  only that "B.M. died from complications related to her sexual abuse, sexual exploitation, and sex

trafficking facilitated by Defendants." SAC ¶ 3. B.M. is alleged to have been trafficked in 2014 and 2015, but she did not pass away until more than five years later, in June 2021. *See* SAC ¶¶ 128, 145 (alleging trafficking of B.M.); Mot. for Substitution at 2 (advising that B.M. passed away in June 2021). Without specific facts to connect the two, any connection between B.M.'s trafficking and her death appears to be so remote that no reasonable inference of legal or proximate causation may be drawn. *See Steinle*, 17 F.4th at 822 ("We conclude that the connection between Woychowski's storage of the pistol in his vehicle and Ms. Steinle's death is so remote that, as a matter of law, Woychowski's acts were not the proximate or legal cause of the fatal incident."). As the Court pointed out at the hearing, B.M. could have died of any number of causes that have nothing to do with her sex trafficking or the Franchisor Defendants.

Plaintiff's negligence claim suffers from an additional deficiency, in that Plaintiff has not alleged facts showing that the Franchisor Defendants owed B.M. a duty of care. Plaintiff cite California case law holding that "Hotel proprietors have a special relationship with their guests that gives rise to a duty to protect them against unreasonable risk of physical harm." *Howard v. Omni Hotels Mgmt. Corp.*, 203 Cal. App. 4th 403, 431 (2012) (internal quotation marks and citation omitted). Plaintiff's reliance on that case law is misplaced with respect to the Franchisor Defendants, who are not alleged to have been the proprietors of the independently owned motels where B.M. was trafficked. Perhaps recognizing the deficiencies of her negligence claim, Plaintiff requests leave to amend to add additional facts. *See* Pl.'s Opp. at 23.

Accordingly, the Franchisor Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND as to Claim 2 for negligence and Claim 3 for wrongful death.

//
//
//
//
//
//
//

**IV. ORDER**

(1) The Franchisor Defendants' motion to dismiss the second amended complaint is GRANTED WITH LEAVE TO AMEND;

(2) Any amended complaint shall be filed within 60 days after the date of this order, or by April 21, 2025;

(3) Leave to amend is limited to the deficiencies identified in this order – Plaintiff may not add new parties or claims without obtaining express leave of the Court; and

(4) This order terminates ECF 185.

Dated: February 18, 2025

_____
BETH LABSON FREEMAN
United States District Judge

12